Filing # 30746729 E-Filed 08/11/2015 04:50:56 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

| | |
|---|---|
| AUNALI KHAKU, individually and on behalf of others similarly-situated,<br><br>    Plaintiff,<br><br>  v.<br><br>AMERICAN TRAFFIC SOLUTIONS, INC., AMERICAN TRAFFIC SOLUTIONS LLC, AMERICAN TRAFFIC SOLUTIONS CONSOLIDATED LLC, and CITY OF TAMPA,<br><br>    Defendants. | CLASS REPRESENTATION |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff AUNALI KHAKU, individually and on behalf of others similarly situated, brings this class action against AMERICAN TRAFFIC SOLUTIONS, INC., AMERICAN TRAFFIC SOLUTIONS LLC, AMERICAN TRAFFIC SOLUTIONS CONSOLIDATED LLC (collectively, "ATS"), and CITY OF TAMPA ("Tampa"), for unlawfully issuing and collecting fines for red-light traffic violations that were and are void under Florida law.

## NATURE OF THE ACTION

1. This action is brought on behalf of a class of persons who were charged with a red-light traffic violation purportedly issued pursuant to the authority of The Mark Wandall Traffic Safety Program, § 316.0083, Fla. Stat. (the "Wandall Act"), whereby Tampa employed red-light cameras to enforce violations of sections 316.074(1) and 316.075(1)(c) of the Florida Statutes, which require drivers to obey red-light traffic signals.

2.     Tampa contracted with, and delegated all authority to, ATS to operate the red-light cameras, including, but not limited to, determining whether a violation has occurred and issuing the resulting ticket.

3.     ATS is a private, for-profit merchant that designs, sells, installs, maintains, operates, supervises, administers and monitors red-light camera systems, including the issuance and enforcement of notices and citations, for local governments throughout the United States.  It provides these services to approximately 70 Florida municipalities and counties, including Tampa.

4.     At all times material, the highly comprehensive services ATS provided to Florida counties and municipalities have extracted almost complete control from them in the monitoring and enforcement of red-light violations.  ATS's employees – and not local law enforcement officers – control almost the entire law enforcement process.

5.     Pursuant to its arrangement with Tampa, ATS determines which cases evidence a possible red-light violation meriting review by the applicable law enforcement official.  Only ATS's employees have access to all images taken by a red-light camera, and only they review all such images.  ATS then transmits select images of alleged infractions, known as "pre-processed infraction data" or "infraction data," to a Tampa Traffic Infraction Enforcement Officer ("TIEO").  The TIEO then either accepts or rejects the infraction data by clicking an accept or reject button on a computer screen.  If ATS unilaterally determines that a particular case does not meet the evidentiary standards sufficient to merit a red-light violation, that case is not processed any further, and the corresponding images are not submitted to the local authority.

2

6.    In short, and as explained in more detail below, ATS unlawfully conducts and controls almost the entire issuance and enforcement process for red-light camera violations and makes determinations which, under Florida law, are only to be performed by a TIEO.

7.    "In Florida, only law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *City of Hollywood v. Arem*, 154 So. 3d 359, 364 (Fla. 4th DCA 2014) (citing Fla. Stat. §§ 316.0083(3), 316.640 (2011)), *rev. denied*, No. SC15-236 (Fla. Apr. 13, 2015).

8.    Although Florida law authorizes counties and municipalities to delegate *initial review* of potential violations captured by a red-light camera, it does *not* authorize them to delegate the determination of who violates the law or the issuance of Notices of Violation ("NOVs") and Uniform Traffic Citations ("UTCs").  Nor does Florida law allow counties or municipalities to delegate to private vendors the filing of a copy of the UTC with the clerk of court to invoke the jurisdiction of the applicable court.

9.    In contravention of Florida law, Tampa has improperly outsourced to ATS its legislatively granted authority to issue traffic citations and unlawfully delegated to ATS the authority to determine whether a traffic violation has occurred.

10.    As set forth in greater detail below, the foregoing actions by Tampa constitute improper delegations of its police powers, and ATS's issuance of NOVs and UTCs violated Plaintiff's rights under Florida law as well as his rights to due process of law under the U.S. Constitution.

3

## PARTIES

11.    Plaintiff Aunali Khaku is a citizen and resident of Florida, over the age of eighteen, and otherwise *sui juris*.

12.    Defendant City of Tampa is a Florida municipal corporation, created by the State of Florida.

13.    Defendant American Traffic Solutions, Inc. is a Kansas corporation with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Kansas and Arizona.  It is one of the two largest traffic camera vendors/operators in the United States and conducts significant business in Florida, including the operations of numerous red light cameras in Florida.  American Traffic Solutions, Inc. engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.  On its website, American Traffic Solutions, Inc. openly acknowledges its affiliation with the state of Florida and in fact uses the affiliation as a marketing tool.

14.    Defendant American Traffic Solutions, LLC is a Delaware limited liability company with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Delaware and Arizona.

15.    Defendant American Traffic Solutions Consolidated LLC is a Delaware limited liability company with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Delaware and Arizona.

16.    On information and belief, all the foregoing ATS entities are jointly financially controlled by one another and are the alter ego of each other.  Therefore, each is jointly and severally liable for all damages due to Plaintiff and all Class members.

17.    At all times relevant herein, ATS was acting as a contractor to and agent for Tampa by, among other things, performing red-light camera installation and maintenance among other public, governmental, and/or municipal functions, including but not limited to issuing NOVs and UTCs to Class members.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this dispute because this Complaint seeks damages in excess of $15,000.00, exclusive of interest and attorneys' fees.

19.    Venue is proper in Hillsborough County because the cause of action accrued here.

## GENERAL ALLEGATIONS

### A.  The Wandall Act Governs ATS's Business in Florida.

20.    In 2010, the Florida legislature enacted the Mark Wandall Traffic Safety Act (the "Wandall Act"), which authorized the use of red-light traffic-infraction detectors by local governments and the Florida Department of Highway Safety and Motor Vehicles.  The Wandall Act went into effect on July 1, 2010.  This Complaint addresses only violations issued after July 1, 2010.  *See* Fla. Stat. § 316.0083.

21.    The Wandall Act authorizes local governments to use cameras to capture red light violations and enforce such violations.  A county or municipality may authorize a TIEO to enforce the violations and issue them through electronic means.

22.    Pursuant to the Act:

5

> This paragraph does not prohibit a review of information from a traffic infraction detector by an authorized employee or agent of the department, a county, or a municipality *before issuance of the traffic citation by the traffic infraction enforcement officer*.

Fla. Stat. § 316.0083(1)(a) (emphasis added).

23. Florida's statutes do not authorize the delegation of the authority to issue citations to anyone other than a Florida law enforcement officer such as a TIEO. To satisfy this standard, the officer authorized to determine who is prosecuted for a red-light violation must (1) be employed by the sheriff or police department, (2) "successfully complete[] instruction in traffic enforcement procedures and court presentation through the Selective Traffic Enforcement Program as approved by the Division of Criminal Justice Standards and Training of the Department of Law Enforcement, or through a similar program," and (3) "be physically located in the county of the respective sheriff's or police department." Fla. Stat. § 316.640(5)(a).

24. The Wandall Act grants TIEOs the power to enforce red-light violations under sections 316.074(1) and 316.075(1)(c)1 of the Florida Statutes. The Wandall Act further authorizes TIEOs to "review . . . information from a traffic infraction detector" before "the traffic infraction enforcement officer" issues a citation for violations. Fla. Stat. § 316.0083(1)(a).

25. When a UTC is issued under the Wandall Act, "the *traffic infraction enforcement officer shall provide* by electronic transmission a replica of the traffic citation data to the court having jurisdiction over the alleged offense or its traffic violations bureau within 5 days after the date of issuance of the traffic citation to the violator." Fla. Stat. § 316.650(3)(c) (emphasis added).

6

**B. Red-light Traffic Camera Systems and ATS's Red-light Traffic Enforcement Programs.**

26.    Red-light traffic camera systems integrate cameras and sensors that continuously monitor traffic at certain pre-selected intersections.  A red-light camera connects to a sensor that monitors traffic flow at a crosswalk or stop line and is connected to another sensor that detects when the traffic light changes color.  At a specified time after the traffic light has turned red, the camera automatically photographs any vehicle traveling at a pre-set minimum speed.  A digital video camera or cameras are also used to record the entire alleged infraction.

27.    ATS offers privatized, "turnkey" traffic law enforcement solutions designed to detect and enforce red-light traffic infractions.  It provides an all-encompassing range of services to local governments for detection and enforcement of traffic infractions, including but not limited to: (1) marketing and training to help gain public support for its products; (2) aiding local governments in pitching the idea to constituents and lawmakers; (3) traffic studies (performed by ATS) to select appropriate intersections for the installation of its products; (4) the maintenance, repair and installation of its products; (5) training for local government employees, including law enforcement officials; (6) its virtual, private network in encrypted format, utilized by law enforcement officials to review potential infractions and by courts to receive evidentiary support for challenged cases; (7) expert witnesses to support the prosecution of drivers accused of traffic infractions (and training for TIEOs to provide evidentiary testimony); (8) legal advice and support to assist local governments with implementing and defending the program; (9) the design, printing, mailing and processing of NOVs and UTCs; (10) the collection of fees and fines from drivers accused of traffic infractions; (11) forwarding UTCs electronically to the traffic courts, purportedly invoking

7

the courts' jurisdiction; and (12) a nationwide toll-free number and website listed on all NOVs and through which an accused violator is informed of payment options and means by which to contest it.

28.    ATS's programs are so comprehensive that a local government need only obtain necessary construction permits, a TIEO capable of reviewing hundreds of images of potential violations per day, and a hearing process to prosecute alleged violators who challenge the issued NOVs or UTCs.  ATS's programs provide and perform all services necessary to running a traffic-infraction program which services, by law, are within the non-delegable police powers of Tampa.

29.    The pre-processed infraction data ATS initially reviews to determine whether it constitutes a violation is sent to Florida TIEOs in the form of three photos and a very brief video of the alleged infraction.  The first photo shows the vehicle before the stop bar with the red light, the second shows the vehicle beyond the stop bar with the red light and the third is a close-up of the vehicle license plate.  There is no photo or video identifying the driver of the vehicle.  If processed, the owner of the vehicle at the address linked to the license plate will receive the violation, regardless of who was driving the vehicle.

30.    With respect to drivers of rented vehicles, the issuance of the NOV in the foregoing manner can create a substantial delay, resulting in the renter receiving the NOV much closer to or even after its due date.  NOVs of $158.00 quickly become UTCs of $277.00 in this manner.

31.    TIEOs have limited access to ATS's virtual, private network for purposes of reviewing "pre-processed Infraction Data."  On information and belief, once such data is

8

transmitted, the TIEO has access to the images of the potential violation for only a limited period of time.

32.     In exchange for its products and services, ATS charges monthly maintenance and service fees.  If ATS participates in the collection of past due fees, it may collect an impermissible fee of as much as 30% of the NOV or UTC.

33.     For each red light violation charged under the Mark Wandall Traffic Safety Program, the driver alleged to have committed the violation is required to pay a fine of $158.00, and the respective city or municipality that issued the violation is required to remit from such amount $113.00 to Defendant Florida Department of Revenue, and distribute the balance of $45.00 to the respective city or municipality itself.  *See* Fla. Stat. § 316.0083(3)(a)-(b).

### D.  Red-light Traffic Enforcement Programs Violate Florida Law.

34.     Under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *Arem*, 154 So. 3d at 364 (emphasis added).

35.     Tampa, however, has improperly delegated these police powers to ATS who, through its red-light traffic enforcement programs, assume the duty to monitor and enforce red-light traffic infractions for the municipalities and counties with which it contracts.

36.     ATS reviews recorded images and video from red-light cameras and determines, in its sole discretion, whether the recorded images should be forwarded to a TIEO for review of ATS's determination as to whether a violation has occurred.  When ATS

determines that no violation has occurred, no information regarding the violation is ever transmitted to the TIEO or the contracting local government.

37.     When a TIEO authorizes enforcement of the potential violation, ATS automatically populates an electronic NOV form, which includes a computer-generated copy of the TIEO's signature and badge number, prints out the NOV form, and causes it to be sent via first-class mail to the registered owner of the vehicle that the camera photographed.

38.     Once the registered owner of the vehicle receives the NOV, the owner may either pay the $158.00 fine or challenge the violation.  If the registered owner of the vehicle fails to either pay the fine or challenge the violation before the due date, ATS automatically generates a UTC with the badge number and signature of the original reviewing TIEO, mails the UTC to the registered vehicle owner, and automatically generates a replica, which ATS automatically sends to the appropriate clerk of court.

39.     The only involvement by a TIEO during this entire process is his or her initial review of the photographic images ATS forwarded and either authorizing or rejecting the violation.  After authorizing, the TIEO never sees the citation bearing his or her digital signature and badge number.  The TIEO merely acquiesces in ATS's decision to issue an NOV.  And if the registered owner does not pay the fine (or elect an option to try to avoid the fine) before expiration of the specified due date, ATS– and not the TIEO – issues a UTC without any further involvement by the TIEO.

40.     ATS's issuance of a UTC is significant because, unlike an NOV, issuance of a UTC impacts the alleged violator's permanent driving record, unless the UTC is successfully challenged and dismissed.

10

41.   ATS is a private, for-profit vendor that is not authorized to issue citations. Its employees are not employed by the local sheriff or police department, are not certified under Florida law and, on information and belief, its employees are physically located outside of Florida.   The NOVs and UTCs issued by ATS are thus ineffective and unenforceable as a matter of law.

42.   The Wandall Act only authorizes state departments, counties and municipalities to assess and collect fines from NOVs and UTCs, Fla. Stat. §§ 316.0083(1)(b)2-3, and forbids the receipt of a commission from any revenue collected from red-light camera violations, § 316.0083(1)(b)4.

43.   Under ATS's red-light programs, if the accused pays the associated fine, his or her payment is collected and processed by ATS, for which it receives an additional fee.

44.   If a driver fails to pay the UTC fine by the due date, the violation goes to collections and the fine increases substantially.   If ATS or its agents serve as the debt collector, it receives an additional fee.

45.   ATS lacks authority to assess and collect fines, as these powers cannot be delegated by Tampa to a private, non-governmental entity.   Thus, any fees charged by ATS in connection with collecting or processing payments have been obtained illegally.

46.   Further, pursuant to Fla. Stat. § 316.650(3) and Florida Rule of Traffic Court 6.040(b), the UTC sent to the clerk is the initiating document that invokes the subject-matter jurisdiction of the traffic court and, pursuant to Fla. Stat. § 315.650(3)(c), only the TIEO may submit the UTC to the court electronically and invoke the traffic court's jurisdiction.

47.    There is no statutory authority allowing private vendors to forward electronically the UTCs to the clerk as ATS has done.  As a result, at all times material, traffic courts never had jurisdiction over UTCs forwarded by ATS.

48.    Notably, Tampa compensates ATS in a manner that creates an incentive for ATS to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

49.    ATS purports to operate under the specific authority granted by the Florida legislature under the Wandall Act.  Yet, more than four years after the Act became effective, ATS continues to operate in direct violation of certain provisions in the Act and to the detriment of Plaintiff and others similarly situated.

**E.  Plaintiff's Experience with ATS.**

50.    In or about January 2014, Plaintiff Aunali Khaku was photographed for an alleged red light camera violation by an ATS camera in or near Tampa, Florida.  As the registered owner of the vehicle photographed, she received an NOV in the amount of $158.

51.    The NOV bore the name and badge number of an officer, and included an affirmative representation that "[t]he traffic enforcement officer named above has reviewed the recorded images evidencing the red-light signal infraction, has identified the tag number of the violating vehicle and has found reasonable and probable grounds that a violation has been committed."

52.    Plaintiff Khaku paid the NOV online in or about January 2014.

**F.  Plaintiff and All Class Members Have Been Issued Invalid and Unenforceable Tickets.**

53.    The NOVs issued by ATS to Plaintiff and the Class bear an attestation and affirmance that a TIEO has reviewed the recorded images and identified the license plate

number of the allegedly violating vehicle and therefore has found reasonable and probable grounds that an offense has been committed, resulting in the violation charged. UTCs bear similar attestations and affirmances, giving them the imprimatur of being from the municipality or county from which they purport to be issued. In fact, both NOVs and UTCs are initially reviewed and ultimately issued by ATS.

54. The concealment of ATS's role in the issuance of the NOV deprived Plaintiff of full knowledge of the facts, and Plaintiff paid in reliance on the mistaken assumption that the NOV had been issued by Tampa.

55. Plaintiff and the Class received NOVs and/or UTCs and could not reasonably have known that the tickets were issued in a manner inconsistent with statutory requirements. Because of the foregoing unlawful conduct, the tickets were not enforceable, and Plaintiff and the Class were wrongfully induced to pay unlawfully imposed fines.

## CLASS REPRESENTATION ALLEGATIONS

56. Under Fla. R. Civ. P. 1.220(b)(2) and (3), Plaintiff brings this action on behalf of herself and a Class initially defined as follows:

> All individuals and entities who received an NOV and/or UTC based upon an image or video taken from a red-light camera operated in Tampa by ATS from July 1, 2010, through the date of class certification and who either paid the statutory fine and any additional fees in connection therewith or still owe the fine.

57. Excluded from the Class are ATS and its employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; TIEOs and other law enforcement personnel employed or contracted by Tampa who participated in the red-light camera programs; and the judicial officers and their immediate family members and associated court staff assigned to this case.

13

## Ascertainability

58.     The Class can be readily identified using ticket payment records, issuance records, and other information kept by ATS, public records maintained by Tampa and/or the Florida Department of Revenue, or third parties in the usual course of business and within their control.

## Numerosity

59.     As there were in excess of approximately 43,000 red-light traffic NOVs and UTCs issued in Tampa between July 2013 and July 2014 alone[1], the number of Class members is great enough that joinder is impracticable.

## Typicality

60.     Plaintiff's claims are typical of the claims of the Class, as Plaintiff and Class members alike were issued unauthorized NOVs and were harmed in the same way by ATS's and Tampa's uniform misconduct.

## Adequacy of Representation

61.     Plaintiff will fairly and adequately protect the Class's interests and have retained counsel competent and experienced in class-action and red-light camera litigation. Plaintiff's interests are coincident with, and not antagonistic to, absent Class members' interests because by proving his individual claim he will necessarily prove the liability of ATS and Tampa to the Plaintiff Class. Plaintiff are also cognizant of, and determined to, faithfully discharge his fiduciary duties to the absent Class members as the Class representatives.

---

[1] http://www.flhsmv.gov/reports/redlightcameraanalysis2014.pdf.

14

62. Plaintiff's counsel have substantial experience in prosecuting class actions. Plaintiff and counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Class.

**Commonality and Predominance**

63. There are numerous questions of law and fact the answers to which are common to each Class and predominate over questions affecting only individual members, including the following:

a) whether Tampa improperly delegated its police powers by contractually outsourcing its statutory obligations to ATS;

b) whether ATS determines which cases TIEOs review;

c) whether ATS's review of video and photographs of alleged violation determines which ones to forward to Tampa;

d) whether ATS determines who is subject to prosecution for a traffic infraction;

e) whether ATS creates the traffic citations;

f) whether ATS issues the traffic citations to the vehicle owner;

g) whether ATS transmits the traffic citation information to the respective courts;

h) whether ATS violated Florida law by selecting which alleged violations are forwarded to Tampa; designing, printing and/or issuing NOVs and/or UTCs; and/or transmitting UTCs to the respective courts;

i) whether ATS's practice of issuing NOVs and/or UTCs is "unfair," "deceptive" or "unconscionable" under the Florida Deceptive and Unfair Trade Practices Act;

j) whether ATS's red-light camera traffic-enforcement program deprived Plaintiff and Class members of property without due process;

k) whether Plaintiff and Class members are entitled to an order

15

enjoining ATS from continuing to operate its red-light camera programs;

l)      whether Plaintiff and Class members are entitled to disgorgement or restitution of the fines and other fees wrongfully and unlawfully collected or otherwise obtained by ATS in connection with its red-light camera program; and

m)     whether ATS's conduct injured Plaintiff and Class members and, if so, the extent of the damages.

### Superiority and Manageability

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class members is impracticable.  Likewise, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

65.     The prosecution of separate actions by the individual Class members would also create a risk of inconsistent or varying adjudications for individual Class members, which could also establish incompatible standards of conduct for ATS and Tampa.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

### <u>COUNT I</u>
*vs. ATS*

### Violation of Florida Deceptive and Unfair Trade Practices Act

66.     Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein, and further alleges:

16

67.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

68.    ATS's operation of their red-light camera programs, as described above, constitutes an "unfair," "deceptive," and/or "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

69.    Specifically, ATS's red-light camera program is "unfair," "deceptive," and/or "unconscionable" in one or more of the following ways:

a)    ATS unlawfully issues NOVs and UTCs that only appear to have been issued by a government actor and that conceal ATS's role in their issuance;

b)    ATS unlawfully issues NOVs and UTCs that it lacks legal authority to issue;

c)    ATS threatens people, including Plaintiff and Class members who received NOVs and/or UTCs from ATS, with monetary fines using unlawfully issued NOVs and/or UTCs, in violation of Fla. Stat. § 316.0083;

d)    ATS does not reveal that the TIEO does not conduct a preliminary review of all images captured by red-light cameras before an NOV is issued, or re-review an alleged violation before a UTC is issued;

e)    ATS does not reveal that neither the NOV nor the UTC has been reviewed by a TIEO or other law enforcement officer;

f)    ATS sends a copy of the UTC and other necessary information to the applicable court, thereby unlawfully initiating a judicial proceeding, when Florida law only allows such transmission to be made by a TIEO (Fla. Stat. § 316.650(c));

g)    As part of its unlawful profit-seeking activity, ATS also directly collects some of these fines as well as additional fees incident to the payment of the fines; and

17

h)    The manner in which ATS is compensated by its local government clients creates an incentive for ATS to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

70.    The above-referenced statements and/or omissions would be material to a reasonable person, and would likely affect his or her choice with respect to paying fines or contesting them.

71.    Based on the foregoing, ATS's actions caused or are likely to cause substantial injury to persons that they cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to persons or competition; or ATS's actions offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to persons. As a result, ATS has engaged in unfair acts or practices in violation of FDUTPA.

72.    As a result of ATS's unfair, deceptive and/or unconscionable practices, this Plaintiff and all Class members have been aggrieved and have suffered, or will suffer, actual damages resulting from their payment of the fines in the NOVs and/or UTCs, as well as any fees they incurred as a direct result of paying those fines.

73.    In addition to their actual monetary damages, this Plaintiff and the Class are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

a)    a permanent injunction to prevent ATS from continuing to engage in these unlawful practices, including ceasing all efforts to assist in the collection of unpaid fines; and

b)    a declaratory judgment that ATS's above-mentioned conduct violates the FDUTPA.

18

74.    Plaintiff and the Class are entitled to actual damages and all other relief allowable under FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

## COUNT II
### *vs. ATS*

### Unjust Enrichment

75.    Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein, and further alleges:

76.    ATS issued NOVs and/or UTCs to Plaintiff and the Class in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering them unlawful.

77.    Plaintiff and the Class members who paid these fines conferred a benefit upon ATS, regardless of whether the fines were paid initially to ATS or to the municipality or county, because ATS profits from the revenue generated from its unlawful red-light camera program.

78.    ATS accepted and retained the benefit of this revenue, both in the form of its contractual fees with the county or municipality and additional fees generated by ATS's website designed to facilitate collection of the unlawful fines.

79.    In light of the foregoing, it would be inequitable for ATS to be permitted to retain the benefit of the revenue it has received from its unlawful red-light camera program.

80.    Accordingly, Plaintiff and the Class seek disgorgement and/or restitution of these unlawfully imposed fines from ATS.

## COUNT III
### *vs. Tampa*

### Unjust Enrichment

19

81.     Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein, and further alleges:

82.     Tampa contracted with ATS, who issued NOVs and/or UTCs to the Plaintiff and the Class for asserted red-light camera violations within Tampa's jurisdiction in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering the NOVs and/or UTCs unlawful.

83.     Plaintiff and the Class members who paid these fines conferred a benefit upon Tampa, regardless of whether the fines were paid initially to ATS or to Tampa.

84.     Tampa accepted and retained the benefit of the revenue generated by these red-light camera fines.

85.     In light of the foregoing, it would be inequitable for Tampa to be permitted to retain the benefit of the revenue it has received from the unlawfully conducted red-light camera program.

86.     Accordingly, Plaintiff and the Class seek disgorgement and/or restitution of these unlawfully imposed fines from Tampa.

## COUNT IV
### vs. Tampa

**Violation of the Right to Due Process Pursuant to the Florida Constitution**

87.     Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein, and further alleges:

88.     Article I, Section 9 of the Florida Constitution, provides in part that "[n]o person shall be deprived of life, liberty, or property without due process of law..."

89.     Notice is a fundamental aspect of due process.  The NOVs and UTCs sent to Plaintiff and Class members only advised them of certain rights to challenge the NOVs and

20

UTCs, but failed to disclose critical information about the entirety of the Plaintiff's and Class members' legal rights.  Specifically, the NOVs and UTCs failed to disclose that they were issued through an improper delegation of Tampa's police powers to ATS, which rendered the NOVs and UTCs void *ab initio*.

90.     Tampa charged Plaintiff and the Class fines and fees for red-light violations that resulted from the unlawful delegation of police powers to ATS. Such violations were void *ab initio* and, therefore, Tampa deprived Plaintiff and the Class of their property without due process of law.

91.     As a direct and proximate result of Tampa's violation of Plaintiff's and the Class's due process rights under the Florida Constitution, Plaintiff and the Class have suffered injuries and damages.

### <u>COUNT V</u>
*vs. ATS and Tampa*

**Declaratory Judgment and Injunctive Relief**

92.     Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth herein, and further alleges:

93.     This is a count for injunctive and declaratory relief pursuant to Chapter 86, Florida Statutes, based upon ATS's and Tampa's violations of Florida Statutes §§ 316.0083(1)(a), 316.650(3)(c), 316.640(5)(a), and *City of Hollywood v. Arem*.

94.     Florida Statutes § 86.011 provides in relevant part:

> The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed . . . Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent, or supplemental relief in the same action.

21

95.    Plaintiff are in doubt about their rights under Florida Statutes §§ 316.0083(1)(a), 316.650(3)(c), and 316.640(5)(a) and *City of Hollywood v. Arem*.

96.    A declaration of rights, status, and other equitable or legal relations within the meaning of Florida Statutes § 86.011 because Tampa improperly delegated its police powers when it contractually outsourced its statutory obligations to ATS, a for-profit, non-governmental corporation. Specifically, Tampa:

(a)    violated Fla. Stat. § 316.0083(1)(a) because it impermissibly delegated its statutory authority to ATS and allowed ATS to issue NOVs and UTCs;

(b)    violated Fla. Stat. § 316.650(3)(c) because it impermissibly delegated its statutory authority to ATS by allowing ATS to unlawfully initiate a judicial proceeding when Florida law only allows a TIEO to lawfully do so;

(c)    violated Fla. Stat. § 316.640(5)(a) because it impermissibly delegated its authority to ATS and allowed ATS to issue NOVs and UTCs because under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *City of Hollywood*, 154 So. 3d at 364 (emphasis added); and,

(d)    violated Fla. Stat. §§ 316.0083(1)(b)(2)-(4) when it allowed ATS to receive a commission from UTC and NOVs because the aforementioned statutes forbid the receipt of a commission from any revenue collected from red-light camera violations to an entity other than state departments, counties and municipalities.

97.    Plaintiff and the Class seek a determination of their rights under Fla. Stat. §§ 316.0083(1)(a), 316.650(3)(c), and 316.640(5)(a) and *City of Hollywood v. Arem*, as they relate to Tampa's improperly delegating its police powers by contractually outsourcing its statutory obligations to ATS, a for-profit, non-governmental corporation.

22

98.    Specifically, Plaintiff and the Class seek a declaratory decree finding that Tampa:

(a)    violated Fla. Stat. § 316.0083(1)(a) because it impermissibly delegated its statutory authority to ATS and allowed ATS to issue NOVs and UTCs;

(b)    violated Fla. Stat. § 316.650(3)(c) because it impermissibly delegated its statutory authority to ATS by allowing ATS to unlawfully initiate a judicial proceeding when Florida law only allows a TIEO to lawfully do so;

(c)    violated Fla. Stat. § 316.640(5)(a) because it impermissibly delegated its authority to ATS and allowed ATS to issue NOVs and UTCs because under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *City of Hollywood*, 154 So. 3d at 364 (emphasis added); and,

(d)    violated Fla. Stat. §§ 316.0083(1)(b)2–4, when it allowed ATS to receive a commission from UTCs and NOVs because the aforementioned statutes forbids the receipt of a commission from any revenue collected from red-light camera violations to an entity other than state departments, counties and municipalities.

99.    Plaintiff and the Class also seek a declaratory decree finding that any future violations of Fla. Stat. §§ 316.0083(1)(a), 316.650(3)(c), 316.640(5)(a), 316.0083(1)(b)(2)-(4) would be illegal and prohibited under *City of Hollywood v. Arem*.

100.    The aforementioned case or controversy is justiciable and actual and concerns an important issue that should, in the public interest be resolved, namely: the illegal statutory delegation of authority by Tampa to ATS that also resulted in and will result in the wrongful collection of NOV and UTC fines from Plaintiff and Class members.

23

101.    As a direct and proximate cause of ATS's and Tampa's acts and omissions, Plaintiff and the Class have suffered actual injuries, including being subjected to the threat of unlawful fines and the unlawful monetary fines and associated fees themselves.

102.    Plaintiff and the Class face a further threatened injury: the continued issuance of NOVs and UTCs if ATS and Tampa continue the illegal delegation of authority which, to date, has not ceased.

103.    As such, Plaintiff and the Class have faced harm and face a real and immediate threat of future harm with a high likelihood of occurring.

104.    ATS's and Tampa's acts and omissions as set forth herein, have caused injury and will continue to cause injury if its acts do not cease.

105.    The requested relief would provide a remedy and redress for Plaintiff's and Class members' injuries.

106.    The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiff's and Class members' injuries and threatened injuries.

107.    It is likely that Plaintiff's and the Class's injuries would be redressed by a favorable decision.

108.    The existence of another adequate remedy does not preclude a judgment for declaratory relief.

109.    Plaintiff and the Class are entitled to actual damages.  As a result of ATS's and Tampa's conduct in this matter, Plaintiff were required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

110.    As a direct and proximate cause of ATS's and Tampa's acts and omissions, Plaintiff and the Class have incurred liquidated economic damages in the form of the illegally assessed fines resulting from the illegal NOVs and UTCs, plus interest.

111.    Pursuant to Florida Statutes § 86.011 upon prevailing in this declaratory decree, Plaintiff are entitled to further necessary or proper relief in the form of an award to Plaintiff and the Class of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

a) certification of the proposed Plaintiff's Class;

b) appointment of the Plaintiff as representative of the Class;

c) appointment of the undersigned counsel as counsel for the Plaintiff's Class;

d) a declaration that Tampa's actions, described above, violate § 1983, FDUPTA, the Wandall Act, the Florida Constitution and laws, and constitute unjust enrichment;

e) a declaration that ATS's actions, described above, violate § 1983, the Wandall Act, the Florida Constitution and laws, and constitute unjust enrichment;

f) an order enjoining ATS and Tampa, as provided by law, from engaging any further in the unlawful conduct set forth herein;

g) an award to Plaintiff's Class of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs pursuant to Fla. Stat. § 501.2105, 42 U.S.C. § 1988, and other applicable law;

25

h) an order requiring ATS and/or Tampa to relieve any Plaintiff's Class members of the obligation to pay any outstanding fines demanded based on the unlawful conduct set forth herein; and

i) such other relief as this Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all applicable claims.

Dated:  August 11, 2015

Respectfully submitted,

*s/ Theodore J. Leopold*
Theodore J. Leopold
Florida Bar No. 705608
COHEN MILSTEIN SELLERS
& TOLL PLLC
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
Tel.:561-515-1400
Fax:561-515-1401
tleopold@cohenmilstein.com

 s/ Ervin A. Gonzalez
Ervin A. Gonzalez
Florida Bar No. 500720
Patrick Montoya
Florida Bar No. 524441
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel.: 305-467-7400
ervin@colson.com

Andrew N. Friedman (Pro Hac Vice)
DC Bar No. 375595
DC Bar No. 1014503
Sally Handmaker (Pro Hac Vice)
DC Bar No. 1005414
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, NW
Suite 500 East
Washington, DC 20005
Tel.:202-408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com

Manuel L. Dobrinsky
Florida Bar No. 775525
Jonathan E. Freidin
Florida Bar No. 98955

 *s/ Stephen F. Rosenthal*
Stephen F. Rosenthal
Florida Bar No. 0131458
Ramon A. Rasco
Florida Bar No. 0617334
PODHURST ORSECK, P.A.
City National Bank Bldg., Suite 800
25 West Flagler Street
Miami, FL 33130
Tel.: 305-358-2800   Fax: 305-358-2382
rrasco@podhurst.com
srosenthal@podhurst.com

Marc A. Wites
Florida Bar No. 24783
WITES & KAPETAN, P.A.
4400 N. Federal Highway
Lighthouse Point, FL 33064
Tel.: 954-570-8989   Fax: 954-354-0205
mwites@wklawyers.com

Douglas F. Eaton
Florida Bar No. 129577
EATON & WOLK, P.L.
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.:  305-249-1640
Fax:  786-221-1759
deaton@eatonwolk.com

Andrew T. Trailor
ANDREW T. TRAILOR, P.A.
8603 S. Dixie Highway
Suite 303
Miami, Florida 33143
Tel.: 305-668-6090
Fax: 305-668-6225
andrewtrailor@attlawpa.com

Keith A. Goldbaum
Florida Bar No. 475637

FREIDIN DOBRINSKY BROWN AND
ROSENBLUM, P.A.
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.:  305-371-3666
jfreidin@fdlaw.net
mdobrinsky@fdlaw.net

Rafael E. Millares
Florida Bar No. 504998
ESTRELLA TICKET DEFENSE
LAW FIRM, P.A.
3750 W. Flagler Street, 2nd Floor
Miami, FL 33134
Tel.: 305-503-4124  Fax: 305-443-9132
rmillares@estrellaticketdefense.com

Irwin B. Levin
Richard E. Shevitz
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.:  317-636-6481
Fax:  317-636-2495
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com

David M. Kerner
Florida Bar No. 84388
Jason D. Weisser
Florida Bar No. 101435
SCHULER, HALVORSON,WEISSER,
ZOELLER & OVERBECK, P.A.
Barristers Building
1615 Forum Place, Suite 4D
West Palm Beach, FL 33401
Tel.: 561- 689-8180
Fax: 561- 684-9683
dkerner@shw-law.com
jweisser@shw-law.com

FRIEDMAN, ROSEN WASSER &
GOLDBAUM, P.A.
5355 Town Center Road
The Plaza, Suite 801
Boca Raton, FL 33486
Tel.: 561-395-5511  Fax: 561-368-9274
goldboca@aol.com

Gary M. Farmer, Jr.
Florida Bar No. 914444
Stephen R. Jaffe
Florida Bar No. 390770
Mark S. Fistos
Florida Bar No. 909191
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Tel.:  954-524-2820   Fax:  954-524-2822
gary@pathtojustice.com
steve@pathtojustice.com

Ted L. Hollander
Florida Bar No. 116106
THE TICKET CLINIC - A Law Firm
1580 South Federal Highway
Fort Lauderdale, FL 33316
Tel.: 954-522-5926
Fax: 954-522-5197
tedhollander@theticketclinic.com

*Co-Counsel for Plaintiff*